**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **The United States of America**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**Eduardo Escribano-López,**<br><br>    *Defendant.* | Crim. No. 26-00135-1 (MAJ) |

**OPINION AND ORDER**

### I.    Introduction

On April 15, 2026, the United States filed a one-count indictment (the "Indictment") against Eduardo Escribano-López ("Escribano"), charging him with possession of a machine gun in violation of 18 U.S.C. § 922(o). (**ECF No. 16**). The Indictment alleges that, on April 1, 2026, Escribano allegedly "possessed a[n] . . . AK-47 Rifle[.]" (**ECF No. 16 at 1–2**).

Invoking the "the right of the people to keep and bear Arms" guaranteed by the Second Amendment, Escribano moves to dismiss the Indictment. (**ECF No. 18**). Escribano claims that 18 U.S.C. § 922(o), which makes it "unlawful for any person to transfer or possess a machinegun[,]" is facially unconstitutional. According to Escribano, the Government has no legitimate authority to prohibit civilians from possessing military-style assault weapons that fire automatically. In the alternative, Escribano also brings an as-applied challenge to § 922(o), arguing that, since "Escribano has no prior criminal convictions, the government will be hard pressed to find longstanding historical support for prohibiting mere possession of an automatic rifle." (**ECF No. 18 at 2–3**). The

Crim. No. 26-00135-1 (MAJ)                                                    Page 2

Government filed a response in opposition to the motion. (**ECF No. 32**). Escribano filed a reply brief, (**ECF No. 37**), and the Government filed a sur-reply. (**ECF No. 40**).

After careful consideration, the Court finds that the possession of a military-style automatic machine gun is not conduct that is protected by the Second Amendment. Accordingly, the Motion to Dismiss the Indictment is **DENIED**.

## II.    Analysis

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Elaborating on this provision, the Supreme Court has concluded that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

As with any other right, "the right secured by the Second Amendment is not unlimited" and is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Instead, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes[.]" *Heller*, 554 at 624–625. As the Seventh Circuit observed,

> This presents a line-drawing problem. Everyone can agree that a personal handgun, used for self-defense, is one of those Arms that law-abiding citizens must be free to "keep and bear." Everyone can also agree, we hope, that a nuclear weapon such as the now-retired M388 Davy Crockett system, with its 51-pound W54 warhead, can be reserved for the military, even though it is light enough for one person to carry. Many weapons, however, lie between these extremes.

*Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1181–1182 (7th Cir. 2023). Escribano moves the Court to determine on which side of the line an AK-47 style automatic machine gun falls.

In order to ascertain the scope of the protections afforded by the Second Amendment, the Court looks first to "whether the Second Amendment's plain text covers the possession" of a machine gun. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 43 (1st Cir. 2024) (quoting *New York State Rife & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)) (internal quotations omitted). "If it does, we then consider whether [Section 922(o)] is consistent with this Nation's historical tradition of firearm regulation and thus permissible under the Second Amendment." *Id.* (quoting *Bruen*, 597 U.S. at 17) (internal quotations omitted).

### a. Do machine guns constitute "Arms" under the Second Amendment?

Under the Gun Control Act, it is "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). The National Firearms Act provides the definition of a "machinegun" as, in relevant part:

> Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

26 U.S.C. 5845(b); *see also* 18 U.S.C. § 921(a)(3) (providing that the "[t]he term 'machinegun' has the meaning given such term in [26 U.S.C. 5845(b)]" for the purposes of the Gun Control Act).

Crim. No. 26-00135-1 (MAJ)                                                    Page 4

The fact that machine guns, which were invented in 1884,[1] did not exist at the time of the founding does not foreclose the possibility that the term "Arms" may extend to machine guns: "Just as the First Amendment protects modern forms of communications . . . the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008); *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (explaining that the Second Amendment is not "a law trapped in amber"). As the Supreme Court stated in *Heller*, "[t]he 18th-century meaning [of the term "Arms"] is no different from the meaning today . . . The term was applied, then as now, *to weapons that were not specifically designed for military use and were not employed in a military capacity.*" *Heller*, 554 U.S. at 581 (internal citations omitted) (emphasis added). Unsurprisingly, then, the Supreme Court characterized the argument "that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional" as "startling." *Id*. at 624.

Nevertheless, some disagreement exists among the Courts of Appeals as to whether semi-automatic and automatic assault rifles constitute "Arms" for the purposes of the Second Amendment.[2] The Seventh Circuit recently held that assault weapons and high-capacity magazines do not constitute "Arms" within the meaning of the Second Amendment. *See Bevin v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023); *cf. United States v. Rush*, 130 F.4th 633 (7th Cir. 2025) ("declin[ing] to make a step one

---

[1]     *See United States v. Bridges*, 150 F.4th 517, 524 (6th Cir. 2025) (noting that "the modern, fully automatic machinegun would not be invented until 1884").

[2]     The First Circuit recently declined "to decide whether" extended magazines are "outside the realm of 'arms' protected by the plain text of the Second Amendment." *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 44 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2771 (2025).

Case 3:26-cr-00135-MAJ    Document 61    Filed 08/03/26    Page 5 of 13

Crim. No. 26-00135-1 (MAJ)                                    Page 5

finding that short-barreled rifles are 'arms' protected by the Second Amendment's text"). In *Bevis*, the Seventh Circuit focused on "the role of the militia" in the prefatory clause of the Second Amendment ("[a] well regulated Militia, being necessary to the security of a free State"), noting that "[t]he traditional militia was formed from a pool of men bringing arms in common use at the time for *lawful purposes* like self-defense." *Bevis*, 85 F.4th at 1193 (quoting Heller, 554 U.S. at 624) (internal quotations omitted) (emphasis added). Finding that such "lawful purpose" is under *Heller* "at its core the right to individual self-defense[,]" and observing that semi-automatic assault rifles are "military-grade weaponry" dissimilar to "many different types of firearms that are used for individual self-defense[,]" the Seventh Circuit ruled that semi-automatic rifles are not the type of weapon typically used for a "lawful purpose" such that they would fall within the meaning of the term "Arms." *Bevis*, 85 F.4th at 1195. In reaching that conclusion, the Seventh Circuit relied on a dicta from *Heller* explaining "that [machine guns] are not among the Arms covered by the Second Amendment; they are instead a military weapon." *Id.* (citing *Heller*, 554 U.S. at 624). As the Tenth Circuit later explained in *Morgan*, "[w]ith its very limited ability to serve the defensive needs of the average citizen yet its extraordinary capability to advance the offensive purposes of criminals, the machinegun is exactly the type of firearm that is most useful in military service and may be banned consistent with the Second Amendment." *United States v. Morgan*, 150 F.4th 1339, 1348 (10th Cir. 2025) (holding that Section 922(o) are not arms in "common use" for lawful purposes and that they therefore do not constitute "Arms" within the meaning of the Second Amendment, "especially given that self-defense does not commonly require fir[ing] more than 1,000 rounds per minute.") (internal quotations omitted). The Fourth Circuit has also held that machine guns do not constitute "Arms" for the purposes of the Second Amendment. *See*

Case 3:26-cr-00135-MAJ    Document 61    Filed 08/03/26    Page 6 of 13

Crim. No. 26-00135-1 (MAJ)                                                    Page 6

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) (noting that "a weapon must be 'in common use today for self-defense' to be within the ambit of the Second Amendment" and concluding that "the AR-15 is a combat rifle that is both ill-suited and disproportionate to self-defense. It thereby lies outside the scope of the Second Amendment.").[3] In contrast, the Sixth Circuit found in *United States v. Bridges* that machine guns constitute "Arms" without extensive analysis: "[a]lthough machineguns come in various forms, a machinegun—such as a handgun modified for fully automatic fire—is undoubtedly an 'Arm[]' that one can 'keep and bear.'" 150 F.4th 517, 524 (6th Cir. 2025) (holding at Bruen step two that machine guns may be banned under the Second Amendment); *compare Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024) (holding that appellant was "likely to succeed in showing that [high capacity magazines] are 'in common use' for self-defense").

The Court agrees with the majority view that machine guns do not constitute "Arms" for the purposes of the Second Amendment. The characteristics of the fully automatic AK-47 style rifle at issue in this case demonstrate that machine guns are not weapons that are necessary for or proportionate to self-defense. *See Bevis*, 85 F.4th at 1191 (describing the operative question under Heller and Bruen as "whether law-abiding

---

[3]        Numerous pre-*Bruen* cases likewise hold that machine guns are either not "Arms" within the ambit of the Second Amendment or are permissibly banned even despite Second Amendment protections. *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir.2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use."); *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) (machine guns are not "arms" in "common use" for self-defense by law-abiding citizens); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (holding that "the Second Amendment does not protect . . .  personal possession of machine guns."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (noting that, in the aftermath of *Heller*, "every circuit court to address the issue has held that there is no Second Amendment right to possess a machine gun" and reaching the same result).

citizens retain adequate means of self-defense.") (internal quotations and citations omitted). The AK-47 is widely recognized as one of the world's most ubiquitous and effective killing machines: the weapon has been described as "a primary weapon of guerrillas, terrorists, and many armed criminal gangs[,]"and "the most lethal instrument of the Cold War." C.J. CHIVERS, THE GUN: THE AK-47 AND THE EVOLUTION OF WAR, pp. 4-5 (Allen Lane 2010). Such weapons are not primarily deployed for lawful purposes or especially useful for self-defense. Experience teaches that this conclusion is common sense. In *Bianchi*, the Fourth Circuit summarized the bloody legacy of such high-capacity weapons and the unthinkable harms that they have inflicted on American civilians in recent terrorist attacks:

> AR-15 or AK-47 type assault rifles . . . have been used in every major terrorist attack on U.S. soil in the past decade: the 2015 San Bernardino office attack (14 victims killed, 24 injured), the 2016 Pulse nightclub shooting (49 victims killed, 58 injured), the 2018 Pittsburgh synagogue shooting (11 victims killed, 6 injured), the 2019 El Paso Walmart shooting (23 victims killed, 22 injured), and the 2022 Buffalo supermarket shooting (10 victims killed, 3 injured).

*Bianchi v. Brown*, 111 F.4th 438, 457 (4th Cir. 2024), *cert. denied sub nom. Snope v. Brown*, 145 S. Ct. 1534 (2025). This is no coincidence. As C.J. Chivers has explained, the effectiveness of the AK-47 has "meant that once [it] was distributed, the small-statured, the mechanically disinclined, the dimwitted, and the untrained might be able to wield, with little difficulty or instruction, a lightweight automatic rifle that could push out blistering fire for the lengths of two or three football fields. For the purpose for which it was designed—as a device that allowed ordinary men to kill other men without extensive training or undue complications—this was an eminently well-conceived tool." C.J. CHIVERS, THE GUN: THE AK-47 AND THE EVOLUTION OF WAR, pp. 4-5 (Allen Lane 2010).

Case 3:26-cr-00135-MAJ    Document 61    Filed 08/03/26    Page 8 of 13

Crim. No. 26-00135-1 (MAJ)                                                    Page 8

Because Escribano takes aim at the Constitutionality of Section 922(o) in a facial challenge to the statute,[4] moreover, he necessarily suggests that firearms with an even greater destructive power than a fully automatic AK-47 rifle cannot legitimately be prohibited by the Government. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) ("[A] plaintiff can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications.") (internal quotations omitted). Indeed, Escribano concedes that the statutory term "machinegun" may encompass even "an aircraft-mounted cannon[.]" (**ECF No. 18 at 16**) (quotations and citations omitted). Suggesting that such weapons cannot be regulated is a dramatically revisionist and disturbing reading of the Second Amendment. The law is clear that "weapons that are most useful in military service" are not protected by the Second Amendment. *Heller*, 554 U.S. at 627. And for good reason. Escribano's interpretation would render legal, for instance, the M250, the U.S. Army's new standard issue light machine gun. The M250 may also be defined as "[a] weapon which shoots . . . automatically more than one shot,

---

[4]      The Court notes that facial challenges are "disfavored," "often rest on speculation," short circuit the democratic process," and "run contrary to the fundamental principle of judicial restraint." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). In fact, facial challenges are "the 'most difficult [type of] challenge to mount successfully.'" *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). To succeed, Defendant would have to satisfy the Court that there exists "no set of circumstances . . . under which [the challenged statute] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal quotations and citations omitted). Defendant falls woefully short of that high bar.

         Nor does Escribano's as applied challenge fare any better. For the reasons described above, the AK-47 is not the type of weapon commonly used for "lawful purposes" such that it falls within the ambit of the Second Amendment. And where Escribano argues that Section 922(o) is unconstitutional as applied to him because it punishes the "mere" possession of an automatic rifle by a person with no criminal record, his argument misses the mark: since fully automatic machine guns do not fall within the ambit of the Second Amendment, no person – regardless of their criminal history – has a constitutional right to possess such weapons.

without manual reloading, by a single function of the trigger[.]" 26 U.S.C. 5845(b). The U.S. Army has described the M250 as an "innovative" and "Soldier-focused" weapon that has augmented the "effectiveness and lethality" of the Army.[5] As one army spokesperson has explained, with the M250 "every Soldier has the capability to make first-round hits at distance,"[6] and the weapon's "terminal performance," i.e. the damage it inflicts on targets, is nothing short of "incredible[.]" "[I]t will defeat pretty much anything they come across[,]" according to the Army.[7] To suggest that the possession or transfer of such a weapon cannot be prohibited by the Government makes a mockery of the Second Amendment.

Given that machine guns, as defined by 26 U.S.C. 5845(b), includes such weapons "specifically designed for military use" and capable of inflicting catastrophic harm on society, the Court refuses to endorse the radical idea that such weapons predominantly serve "lawful purposes." *See United States v. Torres-Diaz*, 762 F. Supp. 3d 143, 149 (D.P.R. 2025) (holding "that the reference to 'Arms' in the Second Amendment does not extend to machineguns"). The Court therefore holds that Section 922(o) is facially constitutional as applied to Escribano: AK-47 rifles and similar firearms are not the type

---

[5]    U.S. ARMY, PROJECT MANAGER SOLDIER LETHALITY ANNOUNCES TYPE CLASSIFICATION APPROVAL FOR NEXT GENERATION SQUAD WEAPONS (May 20, 2025) https://www.army.mil/article/285678/project_manager_soldier_lethality_announces_type_classification_approval_for_next_generation_squad_weapons_ngsw [https://perma.cc/8N65-QJBW].

[6]    Timothy Hamlin, *Minnesota Guard Among First to Field Army's Newest M250 Automatic Rifle*, NATIONAL GUARD (Sep. 25, 2025) https://www.nationalguard.mil/News/State-Partnership-Program/Article/4314630/minnesota-guard-among-first-to-field-armys-newest-m250-automatic-rifle/ [https://perma.cc/W5S6-KX5V].

[7]    *See supra* n.5.

of weapons that are primarily used for a "lawful purpose" such that they would fall within the ambit of the Second Amendment. *See Bevis*, 85 F.4th at 1195.

### b. Is Section 922(o) consistent with the historical tradition of firearm regulation in the United States?

Even if machine guns did fall within the ambit of the Second Amendment, Section 922(o) would still only offend the Constitution if it were inconsistent with our historical tradition of firearm regulation in this country. *See Bruen*, 597 U.S. at 17. This second step of the *Bruen* analysis requires the Court to "train [its] attention on two comparisons: how and why the [challenged] regulation[] burden[s] a law-abiding citizen's right to armed self-defense." *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 44 (1st Cir. 2024) (internal quotations omitted). "First, we consider the how, comparing the burden on the right of armed self-defense imposed by the new regulation to the burden imposed by historical regulations. Second, we turn to the why, comparing the justification for the modern regulation to the justification for historical regulations." *Id.* at 44-45 (internal citations and quotations omitted).

To determine how Section 922(o) may burden the right of armed self-defense, the Court "consider[s] the extent to which [machine guns] are actually used by civilians in self-defense." *Id.* at 45. To make that case, Escribano points to statistics from the Bureau of Alcohol, Tobacco, Firearms and Explosives providing that "[a]s of May 2024, Americans possessed 782,958 automatic firearms." (**ECF No. 18 at 13**) (internal quotations omitted). Yet, as the Tenth Circuit pointed out in reviewing the same statistics, most of those firearms "are registered to government entities." *Morgan*, 150 F.4th at 1348. Because the dispositive question of the second *Bruen* prong is how and why machine guns are commonly *used*, not whether they are commonly possessed, and since

the record provides no further support for the proposition that machine guns are in common use for the purposes of self-defense, the Court concludes that Section 922(o) does not significantly burden Second Amendment rights.

This conclusion is consistent with First Circuit precedent. In *Ocean State*, the First Circuit recently addressed the related question of whether Rhode Island's ban on "large capacity feeding devices"—a device that is an accessory to both semi-automatic and automatic firearms—violated the Constitution. 95 F.4th at 45. Answering that question in the negative, the First Circuit noted a total "lack of evidence that [extended magazines] are used in self-defense" and concluded that "banning them imposes no meaningful burden on the ability of [citizens] to defend themselves." *Id*. In addition, more recently, the First Circuit upheld the denial of a preliminary injunction upon finding that a Massachusetts statute banning the possession of semi-automatic assault weapons was likely to survive a Second Amendment challenge. *See Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2026). Here, as in *Capen*, Escribano "do[es] not demonstrate a single instance where the [AK-47] -- or any other banned weapon -- has actually been used in a self-defense scenario." *Id*. at 670. Nor do the characteristics of such firearms make self-evident why they would be necessary or proportional to the lawful purpose of self-defense. While "one could imagine Hollywood-inspired scenarios in which a homeowner would need to fend off a platoon of well-armed assailants" with a military style automatic firearm, *Ocean State Tactical*, 95 F.4th at 45, such fantasies do not provide genuine support for Escribano's broad claim that machine guns are designed to be "both useful for self-defense and warfare." (**ECF No. 18 at 9**).

Moreover, even if Escribano could establish that Section 922(o) imposes a significant burden on legitimate Second Amendment interests, a ban on "dangerous and unusual" weapons like machine guns is consistent with our Nation's history and tradition. *Capen*, 134 F.4th at 665 (quoting *Heller*, 554 U.S. at 627). As the First Circuit explained in *Ocean State*, bans on especially dangerous weapons such as machine guns serve "the need to protect against the greater dangers posed by" those weapons. *Ocean State*, 95 F.4th at 49. "[O]ur nation's historical tradition recognizes [that] need . . . as a sufficient justification for firearm regulation." *Id.* (reviewing historical regulations banning bowie knives, certain quantities of gunpowder, and sawed-off shotguns). And because machine guns are more dangerous than assault rifles and pose some of the same societal concerns as extended magazines, the First Circuit's decisions in *Ocean State* and *Capen* are binding on this Court. Indeed, the reasons in *Capen* for finding that the plaintiff was not likely to succeed on the merits in challenging a firearm regulation targeting AR-15's are even more pressing in the context of fully automatic assault rifles:

> The AR-15's particular dangerousness in mass-shooting scenarios is not purely a function of magazine capacity. The AR-15 fires bullets at over 3,000 feet per second, leading to cavitation, which is the capacity to destroy tissue beyond the direct pathway of the bullet. It does so without imparting [t]he excessive recoil of a hunting rifle, which "precludes rapid firing on target because of the obligatory motion of the gun and its impact on the shooter. Thus, while providing ample bullet speed to inflict a lethal wound, the moderate energy of the AR 15 allows shooting on target literally as rapidly as the trigger can be pulled. According to the same expert report, [t]he efficiency of the AR 15 is only further compounded by large capacity ammunition magazines.

*Capen v. Campbell*, 134 F.4th 660, 673 (1st Cir. 2025) (internal quotations and citations omitted). Since AK-47 rifles and other fully automatic machine guns pose even greater dangers than the semi-automatic rifles at issue in *Capen*, the Court finds that the same result is warranted here: there is no personal Second Amendment right to bear fully

automatic military-style machine guns. In reaching this result, the Court agrees with every circuit court that has addressed this question.[8]

### I.    Conclusion

The Court is not persuaded that the fully automatic firearms prohibited by Section 922(o) constitute "Arms" within the ambit of the Second Amendment. Nor does the Court find that the AK-47 rifle with which Escribano is charged with illegal possession falls within the scope of Second Amendment protections. As such, Escribano's facial and as-applied challenges to Section 922(o) fail. Moreover, even if machine guns did constitute "Arms" under the Second Amendment, the history and tradition of firearm regulations in the United States is consistent with the categorical ban on fully automatic weapons codified under Section 922(o). The Motion to Dismiss is therefore **DENIED**.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 3rd day of August, 2026.

> */s/ María Antongiorgi-Jordán*
> **MARIA ANTONGIORGI-JORDAN**
> **UNITED STATES DISTRICT JUDGE**

---

[8]    Escribano identifies one district court case that reached the opposite result: *United States v. Brown*, 764 F. Supp. 3d 456 (S.D. Miss. 2025). As the Court has explained at length, *Brown* is a fringe outlier. The Court declines to follow that precedent.